[Crim. No. 16730. Second Dist., Div. One. June 12, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY JONES, Defendant and Appellant.

## COUNSEL

Norman W. de Carteret, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jerold A. Krieger, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—Appellant was convicted of two counts of battery upon a police officer engaged in the performance of his duties. He has appealed from that conviction and from an order revoking his probation granted in another conviction.

### Prosecution Evidence

The evidence presented by the prosecution reveals the following. On September 8, 1968, Officers Kimball and Bluth of the Los Angeles Police Department received information through official channels that a robbery and attempted homicide had been committed by two suspects. The suspects were described as two male Negroes, one about 20-22 years of age, 5′ 10″ or 11″ in height and 170 to 180 pounds with "a high natural," and the other 6′ 3″ and 150 to 160 pounds. The suspects were said to be driving a "'66 or '67 burgundy colored Buick Riviera with damage to the left rear of the vehicle."

About 45 minutes after receiving the information at roll call, Officers Kimball and Bluth were on patrol in a marked police car. Both were in uniform. Kimball saw a burgundy-colored 1963 Buick Riviera with a dent in the right door stopped for a traffic light. He observed the passenger leaning from the open door and apparently placing an object under the car or throwing it to the sidewalk. The Buick made a right turn on Arlington. Bluth and Kimball followed in the police car. They activated the red lights of the police vehicle causing the Buick to stop. There were three people in the Buick, all in the front seat. Appellant was seated nearest the passenger door and a co-defendant, Jane Elizabeth Berry, was seated in the middle. Both appellant and the driver of the vehicle are Negro.

Kimball approached the passenger door of the Buick. He observed appellant reach backward as if he were placing something in the back seat of the car. Appellant asked Kimball why he had stopped the car. Kimball

replied that the reason "was because his door was open." Kimball asked appellant to step from the vehicle. Appellant complied. Kimball asked him if he "had any weapons, any guns or knives." Appellant answered, "No." Kimball asked appellant if he could search him for weapons. Appellant replied, "No. Keep your white m - - - - r f - - - - - g hands off of me." Kimball grasped appellant's elbow to turn him around so that he might search for weapons. Appellant pulled away and struck Kimball with his left hand. Kimball attempted to place a bar-arm control, a choke hold, on appellant to control him. Officer Bluth came to Kimball's assistance. Co-defendant Jane Elizabeth Berry exited from the Buick and began to strike and kick Bluth. Appellant continued to struggle to free himself. Miss Berry continued to strike Bluth. Bluth placed a choke hold on appellant and placed him under control. Kimball placed a choke hold on Miss Berry. As Bluth was attempting to handcuff appellant, appellant struck him near the eye. Kimball handcuffed Miss Berry. Bluth then drew his service revolver and ordered appellant not to move. Appellant stopped and remained standing "a couple of feet from Kimball." Sergeant Hopkins arrived on the scene, applied the bar-arm choke hold to appellant, took him to the ground, and handcuffed him.

### Defense

The evidence presented by the defense reveals the following. Appellant was a passenger in an automobile driven by Ronnie Wilson. He was eating "a barbecue dinner." When the police car pulled behind the automobile in which appellant was riding and stopped it, appellant held up the food so that the policemen could tell what it was, and then put it in the back seat. A policeman told appellant to get out of the car. He did so and asked why the car had been stopped. The policeman answered, "You're driving with your door open." Appellant attempted to explain that the door had been damaged in an accident. The officer grasped appellant's shirt and spun him around to the car. Appellant pulled away. The other officer came around the car and struck appellant on the nose causing it to bleed. One of the officers dragged Miss Berry from the car. Appellant, Miss Berry, and Wilson, who had remained in the front seat, were arrested and handcuffed.

### Action by Trial Court

Trial of the case at bench was before a jury. The trial court instructed the jury that "as a matter of law, the officers in this case did, while in the performance of their duties, lawfully stop the defendants on the street for questioning. Under the circumstances, the officers were acting reasonably when they requested the defendants to alight from their automobile and submit to a superficial search for concealed weapons."

The trial court also instructed that: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested or detained for questioning or further investigation by a peace officer, it is the duty of such person to refrain from using force to resist such arrest or detention." That instruction was accompanied by another stating: "A police officer when lawfully engaged in the conduct of his duties may use reasonable force in effecting an arrest or detention for questioning or further investigation."

The trial court instructed the jury that in order to find a defendant guilty of the charges in the information, it must find not only that a battery was committed by the defendant but also that it was commited upon the person of a peace officer engaged in the performance of his duties. It did not, however, instruct that unless the officer upon whom the battery is alleged to have occurred was acting with sufficient cause to detain appellant for questioning or to arrest him, the officer was not engaged in the performance of his duties as that phrase has now been defined by the decisional law. The trial court also did not instruct on the included offense of simple battery.

The jury found appellant guilty of two counts of battery upon a police officer engaged in the performance of his duties—one battery upon Officer Kimball and the other upon Officer Bluth. The trial court sentenced appellant to one year in the county jail. At the time of sentence, appellant was on probation granted as a result of two prior convictions, case number 305542[1] and case number 325730. The trial court revoked probation in case number 325730 and sentenced appellant to one year in the county jail to run concurrently with the sentence imposed upon his current conviction. It also revoked probation in case number 305542 and sentenced appellant to state prison. The court assigned no specific reason for its revocation of probation but rather stated to appellant, "[Y]ou are now in violation of probation."

Appellant filed a pro. per. notice of appeal from his conviction in the current case, A-236450, and from the revocation of probation in case number "304469 c/w 305542." He did not file a notice of appeal from the revocation of probation in case number 325730.

### Issues on Appeal

In his brief, appellant contends that: (1) the trial court committed prejudicial error in instructing the jury; (2) the prosecuting attorney and

---

[1]Case number 304469 was consolidated with case number 305542 as "count 3." Count 3 was dismissed in the interest of justice at the time of sentence.

police officer witnesses were guilty of prejudicial misconduct in referring to appellant as a "male Negro" and to Miss Berry as a "female Caucasian"; (3) the prosecuting attorney improperly and prejudicially cross-examined appellant in a fashion which implied he had committed other offenses; and (4) the prosecutor incorrectly stated the law in cross-examining appellant. In my judgment, the conviction in the case at bench must be reversed because of the cumulative prejudicial effect of errors in the jury instructions.

## Jury Instructions

Appellant is charged with two counts of battery in violation of Penal Code section 242 which are increased in gravity to felonies because the victims of the batteries were police officers then engaged in the performance of their duty as provided in Penal Code section 243.

*Corpus Delicti.* The corpus delicti of the crimes charged includes not only the normal elements of battery but also the fact of the status of the victims at the time of the crime. After the jury had given its verdict in the case at bench, our Supreme Court published its decision in *People* v. *Curtis,* 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33]. The court there held that the portion of Penal Code section 243 which raises a battery from misdemeanor to felony status where the victim is a peace officer engaged in the performance of his duty, does not come into play where the officer makes an illegal arrest because "an officer is under no duty to make an unlawful arrest." Hence, "where . . . there is a question of the applicability of the *Curtis* rule, the legality of the arrest becomes an essential part of the corpus delicti and any factual conflict must be resolved by the jury." (*People* v. *Muniz,* 4 Cal.App.3d 562, 568 [84 Cal.Rptr. 501]; *People* v. *Soto,* 276 Cal.App.2d 81, 86-87 [80 Cal.Rptr. 627]; see also *People* v. *Hood,* 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370].)

The trial court in the case at bench, unavoidably unaware of the then unannounced decision in *Curtis,* took the issue from the jury. It instructed that as a matter of law the officers, while in the performance of their duties, lawfully stopped appellant for questioning. There is present in the record of the case at bench a factual conflict which should have been resolved by the jury. While the prosecution testimony establishes a reasonable ground for the officers to have stopped appellant for investigation, the statement by Officer Kimball made at the time of the incident in question is evidence to the contrary—i.e., that the vehicle in which appellant was a passenger was stopped because its door appeared to be open.

I am aware that the case at bench involves a purported detention for field investigation rather than an arrest as was involved in *Curtis.* That distinction does not render the basic rule of *Curtis* inapplicable. The core

question is the legality of conduct of the police in detaining the suspect. It makes no difference whether that detention is for the purpose of an arrest or merely for the purpose of an investigation. I conclude, therefore, that the instruction given by the trial court, which ruled upon the legality of the conduct of the victim officers as a matter of law, was erroneous under the rule of *Curtis*.

■ *Penal Code section 834a.* The trial court instructed that if a person has or should have knowledge that he is being arrested or detained for questioning or further investigation by a peace officer, "it is the duty of such person to refrain from using force to resist such arrest or detention" whether or not the arrest is lawful. The instruction extends the rule of Penal Code section 834a, which imposes an obligation of submission upon a person arrested, to impose an equal obligation upon a person detained for questioning or investigation. That extension is directly contrary to language of our Supreme Court. The court, in *People* v. *Coffey,* 67 Cal.2d 204, 221 [60 Cal.Rptr. 457, 430 P.2d 15], says: "[S]ection 834a concerns itself with *arrest,* not with detention for questioning." By reason of the rule of *Coffey,* an officer engaged in an unlawful detention for questioning may be resisted by means of reasonable force. (*People* v. *Coffey, supra,* 67 Cal.2d 204, 221, fn. 18.)

The record of the case at bench discloses that Officers Kimball and Bluth, the victims of the battery, detained appellant for questioning and did not purport originally to place him under arrest. The instruction, as given by the trial court, thus misstates the legal principle governing appellant's duty to submit and his correlative right to resist.

■ *Other Instructions.* The error of the trial court in instructing contrary to the requirements of *Curtis* and *Coffey* is compounded by two other errors in the instructions. The trial court, in giving its instruction that the officer victims were as a matter of law acting legally, also instructed that the officers were acting reasonably "when they requested the defendants to alight from their automobile and submit to a superficial search for weapons." The evidence is in conflict whether a request to submit to a search was made. The instruction, by resolving the conflict in favor of the prosecution, runs counter to the rule of *Curtis.* Application of that rule is further inhibited by an omission from the jury instructions. No instruction was given on simple battery. The jury was thus not informed that they might find appellant guilty of that lesser offense if, for example, the officers were not acting legally in detaining appellant for questioning but appellant used excessive force in resisting the detention. (See *People* v. *Hood,* 1 Cal. 3d 444 [82 Cal.Rptr. 618, 462 P.2d 370].)

■ The cumulative error in instruction to the jury was prejudicial.

The key to appellant's guilt or innocence of the offenses charged is the determination of who was the aggressor at the outset of the confrontation. The instructions, by erroneously imposing an obligation upon appellant to submit to a detention for questioning even if that detention was illegal, erroneously determine him to be the aggressor at the critical point in time. The instructions also take from the jury the critical issue of the lawfulness of the officers' conduct and decide that issue in favor of the prosecution in spite of an evidentiary conflict. There is, in my judgment, a substantial possibility that a properly instructed jury would have reached a result different from that reached in the case at bench.

## Claim of Misconduct of District Attorney

■ Appellant contends that he was prejudiced by references at trial to him as a "male Negro" and to Miss Berry as a "female Caucasian." No objection was interposed to the use of the terms in the trial court. Nor can it be said that the terms in any way prejudiced appellant. The jurors were able to observe the respective races of appellant and Miss Berry who were co-defendants at the trial.

■ Appellant also contends that the prosecuting attorney improperly cross-examined him in a manner which implied he had suffered previous convictions. Again, there was no objection to the questions and appellant could not have been prejudiced by the cross-examination. The previous convictions were properly before the jury as impeachment of appellant as a witness.

■ Appellant argues, finally, that the prosecuting attorney misstated the law in asking appellant on cross-examination: "Were you aware that it was a crime to hit an officer?" No objection was interposed to the question. The error in the incomplete statement of the law inherent in the question is, therefore, not properly raised on appeal.

## Revocation of Probation

■ At the time of trial, appellant was on summary probation imposed in case number 305542 on October 4, 1965. The condition of probation is obedience of "all laws." Appellant's probation in case number 305542 was revoked at the same time that sentence was imposed in the principal case. The probation report before the trial judge at that time discloses the following pertinent information for the period from October 4, 1965, until probation was revoked: (1) "6-29-66" a conviction for grand theft auto and receiving stolen goods for which appellant was again placed upon summary probation, conditioned on serving six months in the county jail and paying a $250 fine; (2) "7-21-66" violation of "CYA parole"; (3) "8-9-66" arrest

for possession of marijuana, released, no complaint; (4) "8-14-66" arrested for robbery, released and deemed not arrested; (5) "10-10-66" convicted of failure to appear on a traffic warrant and misdemeanor traffic offense; (6) arrested for robbery, rebooked for disturbing the peace and resisting arrest, found not guilty; (7) the charge which is the subject of the principal case. The probation report recites the facts of the charge in the principal case as true. It recommends that probation be revoked.

The trial judge referred to appellant's past record at some length in explaining his reasons for not granting probation when sentencing appellant in the principal case. After imposing sentence in that case, the judge stated, "You are now in violation of probation." He then revoked probation and imposed a state prison sentence in case number 305542.

The trial judge was vested with discretion to determine whether appellant should remain on probation. (Pen. Code, § 1203.2.) He had the power and properly could have revoked appellant's probation although appellant were not convicted of the offense charged in the principal case. It cannot be determined from the record, however, the manner in which the trial judge would have exercised his discretion had he been aware of the defects in the proceedings leading to reversal of the conviction in that case. That fact, in my opinion, requires reversal of the order revoking probation and remand of the matter to the trial court so that its discretion may be exercised in light of the situation as it now exists. (See *People* v. *Lo Cicero*, 71 Cal.2d 1186, 1195, fn. 9 [80 Cal.Rptr. 913, 459 P.2d 241]; *People* v. *Muniz*, 4 Cal.App.3d 562, 571 [84 Cal.Rptr. 501].)

### Conclusion

The judgment of conviction in case number A-236450 and the order revoking probation in case number 305542 are reversed. The matter is remanded to the trial court for further proceedings in accord with this opinion.

**GUSTAFSON, J.**—I concur in the judgment, but I disagree with the opinion insofar as it states that it was for the jury to determine whether appellant was guilty of felony battery.

If the jury had been instructed in the manner set forth in Justice Thompson's opinion and if appellant had been convicted of felony battery, I think we would have been compelled to reverse the conviction on the ground that there was no substantial evidence from which the jury could have concluded beyond a reasonable doubt that defendant was guilty. (*People* v. *Hall* (1964) 62 Cal.2d 104 [41 Cal.Rptr. 284, 396 P.2d 700].)

A battery against a peace officer becomes a felony only when "the

person committing the offense knows or reasonably should know that such victim is a peace officer . . . *engaged in the performance of his duties.*" (Pen. Code, § 243. Italics added.) Appellant knew, of course, that he was dealing with police officers. The question is whether there was evidence that appellant knew or should have known that the officers were engaged in the performance of their duties in forcibly searching him for weapons.

There is no claim that appellant was involved in the robbery for which he was detained for questioning. There was no evidence that appellant had committed any other crime which he should have known would give the officers the right to search him for weapons. Whether the officers were obliged to tell appellant that he was being detained for questioning in connection with the robbery (see *People* v. *Villareal* (1968) 262 Cal.App.2d 438 [68 Cal.Rptr. 610]) is a question we need not answer because appellant was not only not told that he was being investigated for robbery, but it was undisputed that he was told that the automobile in which he was riding was stopped merely because "it appeared that [the] door was open."

I think it is clear that if an automobile is being operated when one door is not completely closed, an officer who stops the automobile is without authority to search an occupant for weapons. (*People* v. *Franklin* (1968) 261 Cal.App.2d 703 [68 Cal.Rptr. 231].) Presumably the officers and appellant knew this. I submit that no person detained as appellant was reasonably should have known that the officers were not telling the truth and that they were actually investigating a robbery.

On the evidence in the record the only issue on which the case should have gone to the jury is misdemeanor battery.

**LILLIE, Acting P. J.**—I concur in the opinion of Mr. Justice Thompson reversing the judgment in case No. A-236450, but dissent from that portion reversing the order revoking probation and judgment imposed in case No. 305542.

On October 4, 1965, on his plea of guilty to second degree robbery in case No. 305542 defendant was granted summary probation for five years on the condition that he "Obey all laws, orders, rules and regulations of Probation Department and of the Court." While it is true that the order revoking probation in No. 305542 was made on March 7, 1969, by the same judge who on the same day and previous thereto imposed judgment and sentence in the instant case (A-236450), in the light of the comments of the sentencing judge made prior to revocation of probation, his express consideration of the probation report, review of defendant's conduct and opinion as to defendant's inability to function in society, and the probation report itself I am unwilling to assume that the sole basis for revoking

probation was defendant's conviction in case No. A-236450 as in *People* v. *Ketchum,* 185 Cal.App.2d 620, 621 [8 Cal.Rptr. 610], and *People* v. *Muniz,* 4 Cal.App.3d 562, 571 [84 Cal.Rptr. 501]. The sentencing judge heard the evidence in No. A-236450 and read and considered the probation report, each of which was sufficient to warrant his conclusion that the interests of justice require revocation and that defendant violated the condition of probation (§ 1203.2, Pen. Code). Under all of the circumstances there is no basis for disturbing the judgment entered against defendant in case No. 305542. I would affirm the order revoking probation and the judgment imposed in case No. 305542.